IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY a/s/o Hulis & Saliha Mavruk, | ) ) ) |
| Plaintiff, | ) JURY TRIAL REQUESTED ) ) |
| v. | ) Civil Action No.: 10 1351 ) BIANCO, J. |
| ELECTROLUX HOME PRODUCTS, INC., | ) ) WALL, M.J. |
| Defendant. | ) MARCH 25, 2010 |

## COMPLAINT

NOW COMES the plaintiff, by and through its attorneys, and for its Complaint against Electrolux Home Products, Inc., hereby alleges and states as follows:

### Parties

1. At all times relevant hereto, the plaintiff, The Charter Oak Fire Insurance Company ("Charter Oak"), was and is a corporation organized under the laws of the State of Connecticut having its principal place of business in Hartford, Connecticut, and was engaged in the business of providing insurance to consumers.

2. At all times relevant hereto, the defendant, Electrolux Home Products, Inc. ("Electrolux"), was and is a corporation organized under the laws of the State of Delaware, having its principal place of business in Webster City, Iowa, and was and is engaged in the business of designing, manufacturing, and distributing electric and gas clothes dryers.

## Jurisdiction

3.     At all times relevant hereto, Electrolux was authorized to do business and/or did business in the State of New York, transacted business in this State, and otherwise did or performed acts within or without this State which subjected it to the jurisdiction of this Court.

4.     The matter in controversy is between diverse parties and exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars and No Cents ($75,000.00) in value and, therefore, this court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 *et seq.*

## General Allegations

5.     Prior to April 1, 2007, the defendant designed, manufactured, assembled, inspected, tested, distributed, and placed into the stream of commerce residential gas clothes dryers, said products being intended for use by consumers for the ordinary purposes associated with clothes dryers.

6.     At all times relevant hereto, the defendant knew and intended that its clothes dryers would be used by members of the general public, and knew of the specific uses, purposes, and requirements for which said dryers would be utilized. Further, by placing said dryers on the market for sale, the defendant represented that the dryers would safely operate and perform the uses for which they were intended and that, in all respects, the dryers were of merchantable quality.

7.     Prior to April 1, 2007, a gas clothes dryer ("the dryer") designed, manufactured, assembled, inspected, tested, distributed and placed into the stream of commerce by the defendant, was located and installed at premises owned by the plaintiff's insureds, Hulis and Saliha Mavruk (collectively, "Mavruk"), said premises being located at 866 Cranford Avenue,

North Woodmere, New York (the "premises"), where it remained in place and in use until April 1, 2007.

8. Said dryer reached the plaintiff's insureds without substantial change in its condition, and was not altered or modified prior to or during its use.

9. On or about April 1, 2007, a date within the useful safe life of the subject product, a fire originated in the dryer located at the premises. The subject fire, and/or heat, smoke, and soot therefrom spread throughout the premises, thereby causing substantial damage to the interior of the premises, as well as to the personal property of the insureds, and additional losses and expenses.

10. The aforementioned fire originated as a result of a defect in the Electrolux dryer located on the premises, with said defect causing the ignition of lint or other combustible materials.

11. As a result of that defective and/or unreasonably dangerous condition of its product, the defendant is responsible for the losses suffered by the plaintiff and all losses to which the plaintiff is subrogated as set forth hereinbelow.

## Count One – Strict Liability

12. Paragraphs 1 through 11 are hereby incorporated as Paragraphs 1 through 12 of Count One as if fully set forth herein.

13. The aforementioned dryer was unreasonably dangerous, defective, and unsafe for its intended use in that the defendant:

    a) placed its product into the stream of commerce when it knew, or should have known, that, through consumers' normal use of the product, the dryer would operate in such as manner so as to permit lint and combustible materials to accumulate at or near a heat source and thereby cause a fire and present an unreasonable risk of serious injury to consumers;

3

b) distributed, sold, and/or supplied a defectively designed and/or manufactured a product which it knew, or should have known, subjected the premises to an unreasonable risk of harm;

c) failed to properly and adequately warn and instruct as to the safe and proper use of the dryer; including, but not limited to, failing to adequately warn or instruct as to the risk of fire associated with the accumulation of lint at or near the heat source; failing to adequately warn or instruct as to the proper installation of the dryer and its exhaust ducting and the risk of fire associated therewith; and failing to adequately warn as to the proper maintenance and cleaning of the dryer and its ducting and/or exhaust system and the risk of fire associated therewith;

d) failed to properly and adequately assemble, inspect and/or test the dryer;

e) designed, manufactured, distributed, sold, and/or supplied the dryer which would allow the accumulation of lint and combustible materials to accumulate at or near the heat source, thereby rendering it hazardous and dangerous for its contemplated and intended use;

f) designed, manufactured, distributed, sold, and/or supplied the dryer without proper safety features to prevent the accumulation of lint at or near the heat source, including, but not limited to a protected heater box or remote heat source, rendering it hazardous and dangerous for its contemplated and intended use;

h) failed to warn the plaintiff, the plaintiff's insured, and others of the aforesaid defective and dangerous conditions which it knew or should have known existed and created an unreasonable risk of harm to the premises;

i) designed, manufactured, distributed, sold, and/or supplied the dryer without proper safety devices including, but not being limited to, a protected heater box or remote heat source, rendering it hazardous and dangerous for its contemplated and intended use; and

j) failed to utilize state-of-the art technology when designing the dryer when the use of such technology would have eliminated the defective and dangerous conditions aforementioned.

14. The aforementioned defects or defective conditions existed at the time the subject dryer left the possession and/or control of the defendant.

15. The aforementioned defects or defective conditions, and the unreasonably dangerous and unsafe condition created thereby, were a direct and proximate cause of, or a substantial factor in producing, the damage sustained by the plaintiff and the plaintiff's insureds.

16. As a result of the defective condition, the subject premises and associated personal property of the plaintiff's insureds was substantially damaged, and the plaintiffs incurred additional associated expense; pursuant to its right of subrogation as set forth hereinafter, Charter Oak has sustained damages and is subrogated to all the rights of its insureds with respect to all claims for damages against the defendant.

17. At all times relevant hereto, a contract of insurance for loss and/or property damage was in effect between Mavruk and Charter Oak which provided coverage for, among other things, the loss of or damage to the subject premises, as well as the loss of or damage to personal property located within premises and associated expenses.

18. Pursuant to the aforementioned contract of insurance between Mavruk and Charter Oak, monies have been and will be expended on behalf of Charter Oak, to the detriment of Charter Oak, for the damage to the subject premises and personal property, as well as for expenses associated with the fire loss. Therefore, Charter Oak is subrogated to the rights of its insureds with respect to any and all claims for damages against the defendant.

## Count Two – Negligence

1-12. Paragraphs 1 through 12 are hereby incorporated as Paragraphs 1 through 12 of Count Two as if fully set forth herein.

13. The design, manufacture, distribution, and/or introduction into the market of the aforementioned dryer by the defendant in its defective and unreasonably dangerous condition

constitutes a breach of the duty of ordinary care owed by the defendant to the public at large and, specifically, to the plaintiff and its insured.

    14.    Specifically, the defendant breached its duty of ordinary care in that it:

- a) placed its product into the stream of commerce when it knew, or should have known, that, through consumers' normal use of the product, the dryer would operate in such as manner so as to permit lint and combustible materials to accumulate at or near the heat source, and thereby cause a fire and present an unreasonable risk of serious injury to consumers;

- b) distributed, sold, and/or supplied a defectively designed and/or manufactured a product which it knew, or should have known, subjected the premises to an unreasonable risk of harm;

- c) failed to properly and adequately warn and instruct as to the safe and proper use of the dryer; including, but not limited to, failing to adequately warn or instruct as to the risk of fire associated with the accumulation of lint at or near the heat source; failing to adequately warn or instruct as to the proper installation of the dryer and its exhaust ducting and the risk of fire associated therewith; and failing to adequately warn as to the proper maintenance and cleaning of the dryer and its ducting and/or exhaust system and the risk of fire associated therewith;

- d) failed to properly and adequately assemble, inspect and/or test the dryer;

- e) designed, manufactured, distributed, sold, and/or supplied the dryer which would allow the accumulation of lint and combustible materials to accumulate at or near the heat source, thereby rendering it hazardous and dangerous for its contemplated and intended use;

- f) designed, manufactured, distributed, sold, and/or supplied the dryer without proper safety features to prevent the accumulation of lint or combustible materials at or near the heat source, including, but not limited to a protected heater box or remote heat source, rendering it hazardous and dangerous for its contemplated and intended use;

- h) failed to warn the plaintiff, the plaintiff's insured, and others of the aforesaid defective and dangerous conditions which it knew or should have known existed and created an unreasonable risk of harm to the premises;

- i) designed, manufactured, distributed, sold, and/or supplied the dryer without proper safety devices including, but not being limited to, a

protected heater box or remote heat source, rendering it hazardous and dangerous for its contemplated and intended use; and

j) failed to utilize state-of-the art technology when designing the dryer when the use of such technology would have eliminated the defective and dangerous conditions aforementioned.

15. As a direct and proximate result of the negligence and carelessness of the defendant as aforesaid, the subject premises and the personal property of the plaintiff's insureds was substantially damaged, and plaintiff's insureds sustained additional associated expenses; pursuant to its right of subrogation as set forth hereinafter Charter Oak has sustained damages and is subrogated to all the rights of its insured with respect to all claims for damages against the defendant.

16-17. Paragraphs 17 through 18 of Count One are hereby incorporated and made Paragraphs 16 through 17 of Count Two as if set forth fully herein.

WHEREFORE, the plaintiff claims fair, just and reasonable money damages from the defendant.

Dated: March 25, 2010                                   Respectfully submitted,

By: _____
Brian P. Henry (BH7818)
Tedford & Henry, LLP
750 Main Street, Suite 1600
Hartford, CT 06103
Telephone: (860) 293-1200
Facsimile: (860) 293-0685
Email: bhenry@tedfordhenry.com

Attorney for Plaintiff

7