UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THE CHARTER OAK FIRE INSURANCE
COMPANY a/s/o Hulis & Saliha Mavruk,

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO MODIFY THE STIPULATED PROTECTIVE ORDER**

      Plaintiff,

v.

Case No.:  10-CV-01351-JFB-WDW

ELECTROLUX HOME PRODUCTS, INC.,

      Defendant.

----------------------------------------------------------------X

The Plaintiff, The Charter Oak Fire Insurance Company a/s/o Hulis and Saliha Mavruk ("Plaintiff"), by and through its attorneys, Robinson & Cole LLP hereby submits its Memorandum of Law in Support of its Motion to Modify the Stipulated Protective Order ("Order") governing this case and states as follows:

## I.      INTRODUCTION

For several years, Travelers Insurance Company (through its affiliates such as Plaintiff) has been engaged in litigation in several different states against Defendant Electrolux Home Products, Inc. ("Electrolux"), which arises out of a series of devastating dryer fires that occurred at the properties of Travelers' insureds.  Electrolux's core dryer design has a fundamental design defect, namely, that lint accumulates in a heater pan behind the dryer drum, and that said lint is ultimately ignited by either the gas or electric heat source located immediately adjacent to the pan.



The end result is that the ignited lint is sent through the back of the dryer drum and ultimately either sets a load of laundry on fire or ignites plastic component parts in the cabinet of the dryer, which in the instant case, caused significant fire damage. In each case, Electrolux has defended against the lawsuits by relying primarily on an instruction in the user manual that the interior cabinet of the dryer should be professionally cleaned of lint every eighteen months.

Electrolux's strategy in all of its cases has been to stonewall and derail discovery by producing few documents, and witnesses who have little knowledge on the topics addressed in Plaintiff's notices of deposition.[1]   Plaintiff has been forced to expend significant time and

---

[1]     A complete account of Electrolux's discovery violations is contained in Plaintiff's opposition to Electrolux's motion for summary judgment (*see* Doc. No. 78) and also in Plaintiff's motion for default judgment.  *See* Doc. No. 62.  For instance, Judge Wall sanctioned Electrolux on June 3, 2011 and provided a clear warning that any "violation of your discovery obligations again" will result in a recommendation that "Judge Bianco enters a default judgment against [Electrolux]."   *See* Transcript of 6.3.11 hearing, p. 11.  In *Automobile Insurance Company of Hartford Connecticut v. Electrolux North America*, Inc., 08-CV-3237-RJD-RER (E.D.N.Y.), which involves the same parties, the same counsel, and the same design defect, Magistrate Judge Reyes sanctioned Electrolux on two occasions for what he described as "gamesmanship" in failing to produce documents.

resources conducting its own investigations for relevant information, and litigating motions to compel in order to force Electrolux to produce documents that it should have produced voluntarily in order to comply with its Rule 26 obligations.  The court-ordered production of thousands of pages of critical documents has dramatically changed the entire litigation.  *See* Doc. No. 78 at pgs. 6 to 10 (describing the revelations and admissions garnered from Electrolux's documents and the deposition testimony of its design engineers).  Indeed, as a direct result of the documents produced and testimony elicited, Electrolux agreed to pay Travelers all of its damages, interest and costs in a case pending in the Western District of New York in August 2011, thereby stripping the Court of subject matter jurisdiction.  *See The Automobile Ins. Co. of Hartford, Connecticut a/s/o Sherry Demrick v. Electrolux Home Products, Inc.*, No. 1:08-cv-623-RJA-JJM, (W.D.N.Y.) (J. Arcara), Doc. No. 167.

Over the past several months, Travelers and its affiliates have filed several new actions in federal courts around the country.[2]  In each of the cases, pursuant to its obligations under Federal

---

[2]      Presently, there are 24 cases pending in federal courts around the country involving Travelers (and its affiliates) and Electrolux.  *See e.g. The Travelers Home & Marine Ins. Co. a/s/o Kenneth Wallace v. Electrolux Home Products, Inc.*, No. 12-CV-02816, (E. D. Penn.); *Travelers Commercial Ins. Co. v. Electrolux*, No. 12-CV-4642, (C. D. Cal.); *Travelers Indem. Co. v. Electrolux Home Products*, No. 11-1110, (D. Del.); *Standard Fire Ins. Co. v. Electrolux*, No. 11cv03606 JFM, (D. Md.); *Travco Ins. Co. v. Electrolux Home Products*, No. 1:12-cv-00358 GBL-TCB, (E. D. Va.); *The Charter Oak Fire Ins. Co. v. Electrolux Home Products*, No. 1:12cv01093 RLV, (N. D. Ga.); *The Charter Oak Fire Ins. Co. v. Electrolux Home Products,* No. 1:12cv1094, (N. D. Ga.); *Travelers Prop. & Cas. Inc. Co. v. Electrolux Home Products*, No. 1:12cv02386, (N. D. Ill.); *The Auto. Ins. Co. of Hartford, Conn. v. Electrolux Home Products, Inc.*, No. 12:cv6171 T, (W. D. N. Y.); *The Standard Fire Ins. Co. a/s/o Matthew Strada & Sapna Mirchandani v. Electrolux Home Products,* No. 1:12cv0511 RC, (D. C.); *Travelers Prop. Cas. Ins. Co. v. Electrolux,* No. 3:12cv01738 MEJ, (N. D. Cal.); *Standard Fire Ins. Co. v. Electrolux*, No. 8:12cv00992 JFM, (D. Md.); *The Auto. Ins. Co. of Hartford, Conn. v. Electrolux Home Products*, No. 3:12cv195, (E. D. Va.); *The Auto. Ins. Co. of Hartford, Conn. v. Electrolux Home Products*, No. 3:12cv00206 FDW, (W. D. N. C.); *Farmington Cas. Co. v. Electrolux Home Products*, No. CV 11-5869, (E. D. N. Y.); *Charter Oak Fire Ins. Co. v. Electrolux Home Products*, No. CV 11-5936, (E. D. N. Y.); *First Trenton Indem. Co. v. Electrolux Home Products, Inc.*, No. 3:12cv01941 FLW-TJB, (D. N. J.); *Travco Ins. Co. v. Electrolux Home*

Rule of Civil Procedure 26(a)(1) Travelers has or will be producing a list of Electrolux documents and deposition testimony obtained in this matter as part of its initial disclosures and/or responses to discovery. *See* Exhibit 1. The purpose of this disclosure is to alert Electrolux of Travelers and/or its affiliates' intention to rely on these documents and testimony at trial in each of those cases. The documents and testimony elicited from Electrolux's design engineers go to the core of the design defect that is alleged by Travelers in every case and apply across the board to every model and/or type of dryer at issue. *See* Affidavit of David Beauregard, 6.14.12, attached as Exhibit 2.

Recognizing the important impact of these documents and testimony, Electrolux has taken the position in multiple cases that the protective order entered in this case provides them with a shield through which they can prevent Travelers and its affiliates from relying on documents that it took several years and thousands of dollars to uncover. In other words, in yet another inappropriate attempt to use the discovery rules to prevent the adjudication of Travelers' claims, Electrolux seeks to have Travelers re-litigate in each court around the country the same discovery disputes that Travelers has already won. Such tactics should not be permitted.

On June 14, 2010, Plaintiff and Electrolux filed a Stipulated Protective Order with the Court, which governed the confidentiality of materials and information disclosed during discovery. *See* Doc. No. 6, attached as Exhibit 3. The Court entered this Order on June 16, 2010. *See* Electronic Order dated June 16, 2010. Pursuant to paragraph 16 of the Order, all protected material produced in the instant action "shall only be used in connection with the

---

*Products, Inc.*, No. 12-2475, (E. D. N. Y.); *Travelers Auto Ins. Co. of N.J. v. Electrolux Home Products*, No. 1:12cv01943 JHR, (D. N. J.); *Travelers Cas. & Sur. Co. v. Electrolux Home Products, Inc.*, No. 3:12cv207 GCM, (W. D. N. C.); *Travelers Cas. Ins. Co. of Am. v. Electrolux*, No. 3:12cv00502 VLB, (D. Conn.). In each of the cases, Travelers and its affiliates allege that a dryer fire was caused by the same design defect, namely, the placement of the heater pan in proximity to the heat source.

preparation, trial and appeal, if any, of this action and shall not be used for any other purpose. . . .”  At the time the order was entered, Plaintiff did not, and could never have, envisioned that Electrolux was improperly withholding thousands of documents and had failed to identify its core design engineers in its initial disclosures.  *See* Doc. No. 78 at pp. 5, 7-9.  Yet, after being forced by the Court to comply with discovery, *see supra*, it became clear that that was the case. Electrolux should not be permitted to use the protective order entered in this case as litigation artifice to further its campaign of misdirection.

Based upon the foregoing, and in accordance with well-established federal precedent, *see infra*, Plaintiff requests that the court modify Paragraph 4(a) of the Stipulated Protective Order. Presently, that subsection states that confidential documents can be shared with “Attorneys from any law firm that is of record for any named party to this action and in-house counsel for any named party to this action.”  Plaintiff proposes that this subsection be modified to state: “Attorneys from any law firm that is of record for any named party to this action or <u>any other action pending between the parties that involves a dryer fire in which it is alleged that lint ignited in the heater pan</u> and in-house counsel for any named party to this action.”  With such a modification, the courts will not be burdened with deciding the same discovery disputes that have been resolved in Plaintiff’s favor in this case and the related *Gargiulo* matter pending in the Southern District of New York.  *See The Automobile Ins. Co. of Hartford, Connecticut a/s/o Leandra Gargiulo v. Electrolux Home Products, Inc.*, No. 10-cv-0011-CS-GAY (S.D.N.Y.).

The purpose of a protective order is to ensure that confidential documents are not produced to the public at large.  It is not a device to stonewall discovery.  Significantly, Electrolux’s interest in keeping the documents confidential will be maintained because the lawyers involved in the other matters will be covered by not only this Court’s protective order,

but also similar protective orders that are negotiated by the parties in each case.  Accordingly, Plaintiff's Motion to Modify should be granted.

## II.   ARGUMENT

### A.   This Court Has Authority To Modify A Protective Order That Will Result In Production of Documents In Another Case.

It is well established that whether to modify a protective order rests in the sole "discretion of the trial court."  *Wolters Kluwer Financial Serv., Inc. v. Scivantage*, No. 07 cv 2352(HB), 2007 WL 1498114, *6 (S.D.N.Y. May 23, 2007); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004).  In this case, this Court's authority emanates from two sources.  First, the Protective Order itself provides that any party may seek to modify the order at any time.  *See* Exhibit 3, at ¶ 20.  Second, a district court retains the ability to modify or lift protective orders that it has entered.  *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004).  This remains the case even if the party seeking a modification wants to use the information in another proceeding pending in another jurisdiction.  *The Ohio Willow Wood Co. v. Alps South, LLC*, 2011 U.S. Dist. LEXIS 28244, at *4-5 (S.D. Ohio Mar. 18, 2011) ("[I]f there is a protective order issued in a different district which applies to documents produced in that district, 'when the other matter is ongoing, courts have held that any request necessitating the modification of the protective order be directed to the issuing court'"); *Dushkin Pub. Group v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335-56 (D.D.C. 1991) (holding that "this court as a matter of comity respects the order issued by [another district court]" and that any request to modify that order "should be addressed to the issuing court. . . .").  Therefore, because this Court entered the protective order at issue, this Court has the authority and is in the best position to modify the protective order.

**B.      Federal Courts Have Routinely Modified Protective Orders To Allow For
         The Sharing Of Documents In Cases Involving The Same Subject Matter**

This Court should grant Plaintiff's motion to modify the protective order so that the

documents and testimony produced by Electrolux in this case can be shared with lawyers

representing Travelers in other cases against Electrolux concerning dryer fires caused by the

same design defect.   Federal courts around the country have modified protective orders in

situations involving multiple cases across several jurisdictions to include a sharing provision that

permits the sharing of documents produced in one case with unrelated plaintiffs in other actions.[3]

This is far more expansive relief than Plaintiff seeks here, and has been approved by federal

courts in New York.  For instance, in *United States v. Hooker Chemicals & Plastics Corp.*, 90

F.R.D. 421, 426 (W.D.N.Y. 1981), the Western District of New York found that "[u]se of the

discovery fruits disclosed in one lawsuit in connection with other litigation, and even in

collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal

Rules of Civil Procedure."  The Southern District of New York followed suit in *Carter-Wallace,

Inc. v. Hartz Mountain Indus., Inc.,* 92 F.R.D. 67, 69 (S.D.N.Y. 1981), in which the Court found

that defendants failed to "support the absurd tenet that a party can avoid discovery in one case

---

[3]      The typical modification request arises when third parties that are unrelated to the
litigation seek to intervene and modify a protective order in order to obtain documents or
deposition testimony. *See, e.g.*, *Martindell v. International Telephone & Telegraph Corp.*, 594
F.2d 291 (2d Cir. 1979).  Under that scenario, the Second Circuit has applied a narrow standard
designed to protect the confidential documents from being released to the public at large. *See
SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001).  In this case, however, the party seeking
modification of the protective order is not a third-party intervenor, but is instead a pre-existing
party to this litigation.  Furthermore, because the plaintiff seeks only to share the information
with their counsel in other cases, and not the public generally, concerns regarding the continued
confidentiality of the documents are not present.  Indeed, there is little doubt that Electrolux has
shared or discussed the testimony and documents produced in this case with its local counsel
around the country.

merely because it disclosed the same material to an adversary bound by a protective order in another case."  The same result is warranted here.

        1.        **Modification of the Protective Order Will Ensure Full Disclosure And Avoid Duplicative Discovery**

Federal courts have "overwhelmingly embraced" shared discovery as an effective means to insure full and fair disclosure and to avoid duplicative and costly discovery.  *Idar v. Cooper Tire & Rubber Co.,* 2011 U.S. Dist. Lexis 26013, at *9 (S.D. Tex. Feb. 17, 2011) ("[F]ederal courts have 'overwhelmingly embraced' this practice to streamline discovery and promote access to court proceedings."); *see also Wilk v. Am. Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) (holding that the presumption that pre-trial discovery should take place in public is even stronger when "litigants seek to use discovery in aid of collateral litigation on similar issues"); *Menendez v. Wal-Mart Stores East LP,* 2012 U.S. Dist. LEXIS 4143 (N.D. Ind. Jan. 11, 2012) (recognizing availability of sharing provision in protective orders); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.423 (2012) ("Coordination of 'common' discovery in related litigation may also save costs, even if the litigation is pending in other courts.  If related cases are pending in more than one court, coordinated common discovery can prevent duplication and conflicts.").  Indeed, one federal court even permitted one plaintiff to compensate another plaintiff for the exchange of discovery material, with court supervision.  *See, e.g., In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation*, 81 F.R.D. 482, 484-85 (E.D. Mich. 1979) ("The Court sees nothing improper in plaintiffs involved in independent state cases who use the discovery material reimbursing the multi-district plaintiffs' out-of-pocket costs."), aff'd, 664 F.2d 114 (1981).

As support for such sharing provisions, courts have looked to the Federal Rules of Civil Procedure, which are to "be construed to secure the just, speedy, and inexpensive determination of every action."  FED. R. CIV. PRO. 1; *see also Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86,

91 (D.N.J. 1986).  For this reason, "a number of courts have rejected requests to limit the use of discovery to the litigation in which it is initially obtained" and cited the reasoning of the Seventh Circuit, stating that:

> [T]he presumption of open discovery should operate with all the more force when litigants seek [to] use discovery in aid of collateral litigation on similar issues, for . . . access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process . . . where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

*Cipollone*, 113 F.R.D. at 91 (emphasis added) (citing *Wilk v. Am. Med. Assoc.*, 635 F.2d 1295, 1299 (7th Cir. 1980)).  Accordingly, the court in *Cipollone* held that to require each and every plaintiff to go through the identical long and expensive process of discovery "would be ludicrous" and pointed out that even the defendants would "benefit by avoiding repetition of the same discovery in each and every case."  *Id.*; *see also Bowers v. Mortgage Elec. Registration Sys.*, No. 10-4141-JTM-DJW, 2011 WL 3328524, *7 (D. Kan. Aug. 2, 2011) (holding that the protective order should allow plaintiffs' counsel to use documents produced in discovery in the instant action for other specified actions, so long as the documents were maintained as confidential in the other specified actions pursuant to a comparable protective order because to prohibit such use would violate the principle of just, speedy, and inexpensive litigation); *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 18-19 (2d Cir. 1992) (denying plaintiff's motion to seal documents that might be used by defendant in related, foreign litigation).[4]  As one court put it:

---

[4]     *See also Officemax Inc. v. Sousa*, No. 2:09-cv-00631-JAW, 2011 WL 143916, *2 (D. Me. Jan. 14, 2011) (finding it unlikely that the First Circuit would find it an abuse of discretion to modify a protective order to permit the use of confidential information from the instant litigation

> Each plaintiff should not have to undertake to discovery [sic] anew the basic evidence that other plaintiffs have uncovered. <u>To so require would be tantamount to holding that each litigant who wishes to ride a taxi to court must undertake the expense of inventing the wheel</u>. Efficient administration of justice requires that courts encourage, not hamstring, information exchanges such as that here involved.

*Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982) (emphasis added) (allowing sharing of discovery with information exchange for plaintiff lawyers in multiple cases).

Despite being sanctioned several times in this case and others, Electrolux continues to engage in its campaign of misdirection. For instance, despite the fact that its own engineers have eviscerated any claim that the core design of the gas, electric and laundry center dryers are different, *see* Doc. No. 78 at p. 17, Electrolux continues to object to discovery requests on those bases across the country. *See* Electrolux's objections to Plaintiff's discovery requests, *Standard Fire Insurance Company a/s/o Shawana Davis v. Electrolux Home Products, Inc.*, Case No: 8:11 CV 03606-JFM (D. Md.), attached as <u>Exhibit 4</u>.[5] It appears that Electrolux's national strategy is to force Travelers and the courts to engage in repetitive and costly discovery motion practice around the country in order to obtain documents and testimony that Electrolux has already been forced to produce to Plaintiff in this litigation. Such behavior is not conducive to the just, speedy, and inexpensive determination of civil litigation, and only serves to frustrate the administration of justice.

---

in subsequent litigation involving the same plaintiff, especially if the litigants to the subsequent litigation were subject to a similar protective order).

[5]     Electrolux has also objected to any efforts by Travelers to identify recently filed cases as "related cases."

### 2.      Sharing Provisions Have Been Routinely Approved In Product Liability Cases

It is not uncommon for hundreds of lawsuits to be filed in different courts around the country arising out of a common product defect.  Although the damages and individual circumstances in each case might differ slightly, the documents and testimony that concern whether there is a design defect does not change.  As a result, it is not surprising that federal courts have embraced sharing provisions in product liability cases involving a common product defect.  *See, e.g.*, *Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982) ("[i]f, as asserted, a single design defect is the cause of hundreds of injuries, then the evidentiary facts to prove it must be identical, or nearly so, in all the cases.  Each plaintiff should not have to undertake to discover[] anew the basic evidence that other plaintiffs have uncovered"); *Streckenbach v. Toyota Motor Corp.,* 2006 U.S. Dist. LEXIS 38748 (D. Colo. June 12, 2006) ("I agree with plaintiffs' arguments that sharing discovery with other plaintiffs in similar actions helps to promote the public policies of open proceedings, fair disclosure, and judicial efficiency. I am persuaded by the journal articles and those cases which allow sharing between plaintiffs with similar bodily injuries or similar property damage or similar diminution in value of a vehicle, such as the types of plaintiffs in the multi-district litigation. Sharing discovery furthers the important public policy of possibly saving lives and stopping injuries. . . ."); *Parsons v. General Motors Corp.*, 85 F.R.D. 724, 726 n.1 (N.D. Ga. 1980) ("The federal rules do not foreclose collaboration among litigants, and the court does not consider the possibility that plaintiff will share the results of discovery with any other litigant any part of defendant's showing of good cause to justify a protective order."); *Williams v. Johnson & Johnson*, 50 F.R.D. 31, 32 (S.D.N.Y. 1970) ("[T]here is no merit to the all-encompassing contention that the fruits of discovery in one case are to be used in that case only.").

For example, *Cipollone v. Liggett Group, Inc.*, 822 F.2d 335 (3d Cir. 1987) was one of eight actions filed on behalf of cigarette smokers in state and federal courts in New Jersey. *See id.* at 336. Overall, more than 100 such cases were pending in various jurisdictions throughout the country. *See id.* Each of the cases was a product liability action involving claims of negligence, strict liability and intentional wrongdoing that concerned the same product defect, namely, the fact that cigarettes cause lung cancer and other diseases. *See id.* At the trial court level, the District of New Jersey modified a protective order to allow confidential information "produced by defendants in the course of this civil action or any appeal arising therefrom . . . [to] be used in all related or similar cases subject to the terms and condition of this order." *Cipollone v. Liggett Group, Inc.*, 1986 U.S. Dist. LEXIS 16291, at *2 (D. N.J. Dec. 18, 1986); *see also Cipollone v. Liggett Group, Inc.*, 106 F.R.D. 573, 585-86 (D. N.J. 1985) (citing extensive federal precedent approving sharing provisions). On appeal, the Third Circuit affirmed this decision. *Cipollone v. Liggett Group, Inc.,* 822 F.2d 335, 338 (3d Cir. 1987); *cert. denied* 484 U.S. 976 (1987).

Just as in *Cipollone*, the instant case is one of numerous cases throughout the country involving the same defendant and same design defect. In each case, Travelers has alleged that the fire was caused by the ignition of lint in the heater pan. Accordingly, Travelers intends to rely upon the documents and testimony provided by Electrolux (which focuses almost entirely on lint and fires) in each case. Therefore, it is difficult to envision a scenario wherein the documents and testimony will not be the centerpiece of any case. *See* <u>Exhibit 2</u>, Beauregard affidavit. Indeed, despite efforts to block the use of these documents and testimony in some cases, Electrolux recently served discovery requests in a matter pending in the Western District of New York where it asked for documents it produced or prepared in other lawsuits as well as

all deposition transcripts from any other lawsuit relevant to the issues at bar.  *See* <u>Exhibit 5</u>; *The Automobile Ins. Co. of Hartford, Connecticut a/s/o David K. Woolston and Susan M. Woolston v. Electrolux Home Products, Inc.*, No. 12-cv-6171T (W.D.N.Y.), at Requests for Production ¶¶6-7.  As a result, on the one hand, Electrolux is arguing in some parts of the country that the protective order in this case provides it with an avenue to withhold the production of any documents.  Yet, on the other hand, in another case in New York, Electrolux (when it suits its litigation purposes) seeks to have Travelers produce documents and testimony produced in this case.  This type of gamesmanship has been commonplace since Electrolux began litigating these cases.

In sum, a protective order is designed to protect a company's trade secrets, not assist that company in failing to live up to its discovery obligations.  For that reason, federal courts have approved shared discovery arrangements in order to prevent defendants from using protective orders to force plaintiffs to re-litigate discovery motions and motions to compel with respect documents and testimony that have already been provided in a previous lawsuit. *See Cipollone*, 106 F.R.D. at 586 (D.N.J. 1985).  This Court should similarly modify the protective order in this case so that its sister courts are not faced with litigation surrounding Electrolux's discovery abuses, which have tied up the New York courts for the past several years.

## IV.   CONCLUSION

For the foregoing reasons, the Plaintiff, The Charter Oak Fire Insurance Company a/s/o Hulis and Saliha Mavruk, requests that the Court modify Paragraph 4(a) of the Stipulated Protective Order so that it states:  "Attorneys from any law firm that is of record for any named party to this action or any other action pending between the parties that involves a dryer fire in which it is alleged that lint ignited in the heater pan and in-house counsel for any named party to this action."

Dated:  June 14, 2012

Respectfully submitted,

By:     __/s/ Jeffrey J. White_____
Craig A. Raabe
Jeffrey J. White
Laura A. Torchio
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
Telephone:  (860) 275-8200
Facsimile:   (860) 275-8299

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

THE CHARTER OAK FIRE INSURANCE
COMPANY a/s/o Hulis & Saliha Mavruk,

       Plaintiff,

v.

ELECTROLUX HOME PRODUCTS, INC.,

       Defendant.
------------------------------------------------------------------X

**CERTIFICATE OF SERVICE**

Case No.:  10-CV-01351-JFB-WDW

I hereby certify that on June 14, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                     /s/ Jeffrey J. White
                                      Jeffrey J. White