FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 30 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

N° 10-CV-1351 (JFB)(WDW)

THE CHARTER OAK FIRE INSURANCE COMPANY A/S/O HULIS & SALIHA MAVRUK,

Plaintiff,

VERSUS

ELECTROLUX HOME PRODUCTS, INC.,

Defendant.

## MEMORANDUM AND ORDER
July 30, 2012

JOSEPH F. BIANCO, District Judge:

Plaintiff the Charter Oak Fire Insurance Company as subrogee of Hulis and Saliha Mavruk ("Charter Oak" or "plaintiff"), brought this action against Electrolux Home Products, Inc. ("Electrolux" or "defendant"), claiming that Electrolux's design of its dryers is defective. Charter Oak alleges theories of strict liability and negligence. Specifically, Charter Oak claims that Electrolux's core dryer design has a fundamental design defect, namely, that lint accumulates in a heater pan behind the dryer drum which ultimately ignites by either the gas or electric heat source located immediately adjacent to the pan.

Electrolux has moved for summary judgment claiming that collateral estoppel precludes Charter Oak's action. Electrolux argues that plaintiff is collaterally estopped from bringing this action because of the February 2010 jury verdict obtained in a Wisconsin case, *Standard Fire Insurance Company a/s/o Julie Newcomb v. Electrolux Home Products, Inc.*, W.D. Wis. No. 3:08-cv-00540-SLC (the "*Newcomb* case"). The jury in that case found that the dryer was not in a defective condition as to be unreasonably dangerous to the prospective user when it left the possession of Electrolux, but found Electrolux negligent with respect to the design of the dryer and attributed only 25% of negligence to Electrolux.[1] Charter Oak argues that

---

[1] In defendant's brief in support of its motion for summary judgment, Electrolux states that "[A]s the parent company of The Charter Oak Insurance Company (Mavruk) and the parent company of The

collateral estoppel cannot apply because Electrolux committed a series of discovery violations which, in essence, did not give plaintiff a full and fair opportunity to litigate in the *Newcomb* case. Specifically, plaintiff contends that, "[w]hile the court entered judgment in favor of Electrolux in the *Newcomb* matter, holding that Plaintiff had not met its burden of proving that Electrolux defectively designed its clothes dryers, it did so in the absence of crucial evidence, which Plaintiff had requested but that Electrolux wrongfully withheld." (Pl.'s Opp. Br. at 6.) For example, plaintiff points to the following documents which plaintiff asserts were directly responsive to discovery requests in the *Newcomb* case but were not produced and were not discovered by plaintiff until after the judgment in the *Newcomb* case: (1) a 1995 report which indicated that there was charred lint in a heater pan in Electrolux's test dryers; (2) documents from a 2005 Japanese government investigation in which Electrolux's design engineer admitted that lint could travel backwards through the dryer into the heater pan; and (3) warranty spreadsheets documenting over 2,000 incidents of smoke/fire involving defendant's dryers over a five-year period, with over 80% of the claims within 18 months of usage.

For the reasons set forth below, this Court denies summary judgment and finds that plaintiff did not have a full and fair opportunity to litigate in the *Newcomb* case, and thus, plaintiff is not collaterally estopped from bringing this action. In

particular, plaintiff was deprived of a full and fair opportunity to litigate its claim in the *Newcomb* case because (1) crucial evidence supporting plaintiff's claim was not produced by the defendant in the *Newcomb* case even though it was responsive to plaintiff's discovery requests; (2) plaintiff did not learn of the failure to produce the information until after the *Newcomb* trial; and (3) the evidence, if it had been produced by the defendant in the *Newcomb* case, could have altered the outcome of that trial. Thus, plaintiff has made a compelling showing of unfairness in the prior litigation because of defendant's failure to produce crucial evidence, such that plaintiff did not have a full and fair opportunity to litigate the issues. In short, Electrolux's victory in the *Newcomb* case may have been the product of its failure to produce crucial information that was directly responsive to plaintiff's discovery demands in that case. Under such circumstances, the doctrine of collateral estoppel, which the Second Circuit has emphasized is an equitable doctrine that allows considerations of fairness in individual cases, should not be applied to preclude plaintiff's claims in the instant case.

I.    BACKGROUND

A.    Facts

1.    The Instant Case

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' respective Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).

---

Standard Fire Insurance Company (Newcomb), Travelers has ultimate control over an interest in the outcome of the litigation of both cases," and thus, collateral estoppel can apply despite the fact that the plaintiff in the Newcomb case was Standard Fire Insurance Company and the plaintiff in this case is Charter Oak. (Def.'s Br. at 20.) Charter Oak does not dispute this point in its opposition brief.

Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[2]

This case arises out of a fire claimed to have been caused by a negligently and/or defectively designed Electrolux clothes dryer at the home of Hulis and Saliha Mavruk (collectively the "Mavruks"). (Def.'s 56.1 ¶ 1.) Sometime prior to April 1, 2007, a clothes dryer manufactured by Electrolux was installed in the Mavruks' home. (*Id.* ¶ 2.) On April 1, 2007, a fire occurred at the Mavruks' home. (*Id.*) Following the fire, the Mavruks made a claim under their insurance policy with Charter Oak, which ultimately compensated the Mavruks for their fire damage. (*Id.* ¶ 3.)

2. Other Federal Litigation

a. The *Newcomb* Case

On September 16, 2008, The Standard Fire Insurance Company (a subsidiary of the Travelers Companies, Inc. ("Travelers")) ("Standard Fire"), as subrogee of Julie Newcomb, brought an alleged dryer fire lawsuit in the United States District Court for the Western District of Wisconsin which was docketed as case number 3:08-CV-00540-SAC. (*Id.* ¶¶ 14-15.) The action stemmed from a dryer fire at Julie Newcomb's home that Standard Fire alleged was caused by an Electrolux clothes dryer. (*Id.* ¶ 16.) Standard Fire alleged that Julie Newcomb's dryer was defectively designed and that the alleged defective design caused the fire in Julie Newcomb's home. (*Id.*

¶ 17). Standard Fire asserted theories of strict liability and negligence. (*Id.*)

From February 22, 2010 through February 25, 2010, the *Newcomb* case was tried before a jury and Magistrate Judge Stephen L. Crocker. (*Id.* ¶ 24.) The jury returned a verdict in favor of Electrolux. (*Id.* ¶ 26.) Specifically, in response to the question "When the dryer left the possession of Electrolux Home Products was the dryer in a defective condition so as to be unreasonably dangerous to a prospective user?", the jury answered, "No." (*See id.*; Pl.'s 56.1 ¶ 26.) However, the jury found that Electrolux was negligent with respect to the design of the dryer and attributed 25% of negligence to Electrolux. (*Id.*; Pl.'s 56.1 ¶ 26.)

No post-trial motions were filed and no appeal was taken from the jury's verdict in the *Newcomb* case. (*Id.* ¶ 27.) Judgment was entered on the verdict in favor of Electrolux on March 1, 2010. (*Id.*)

b. Currently Pending Actions

The Automobile Insurance Company of Hartford (the "Automobile Insurance Co.") instituted a dryer fire case in the Eastern District of New York captioned, *Automobile Insurance Company of Hartford a/s/o Russell Silver v. Electrolux Home Products, Inc.* which was assigned docket number 1:08-cv-3237 (the *"Silver* litigation"). (*Id.* ¶ 28.) The Automobile Insurance Co. is an "indirect" wholly-owned subsidiary of Travelers. (*Id.* ¶ 29.) In that case, the Automobile Insurance Co. advanced theories of strict liability and negligence under New York law. (*Id.* ¶ 30.) Electrolux filed a motion for summary judgment on the same grounds as those asserted in this case. (*Id.* ¶ 31.)

---

[2] In addition, although the parties' Rule 56.1 statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 statements, rather than the underlying citation to the record, when utilizing the 56.1 statements for purposes of this summary of facts.

The Automobile Insurance Co. has also instituted an action that is pending in the Southern District of New York captioned *American Insurance Company of Hartford a/s/o Leandra Gargiulo v. Electrolux Home Products, Inc.* which was assigned docket number 10-CV-0011. (*Id.* ¶ 33.) The complaint in that action asserts theories of strict liability and negligence under New York law. (*Id.* ¶ 35.) Discovery is complete in that case and a trial date has not yet been set. (*Id.* ¶ 36.)

## B. Procedural History

Plaintiff filed this action on March 25, 2010. Defendant filed an answer on April 12, 2010.

Defendant filed the instant motion on December 19, 2011. Plaintiff submitted its opposition on January 4, 2012. Defendant replied on January 17, 2012. Oral argument was held on March 9, 2012.[3] The Court has fully considered all of the arguments presented by the parties.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

---

[3] Plaintiff filed a motion to preclude the testimony of defendant's expert Thomas J. Bajzek on December 28, 2011. Plaintiff submitted a letter dated February 6, 2012, which indicated that defendant confirmed that it does not plan on calling an expert witness at trial, and thus, plaintiff's *Daubert* motion was moot. At the oral argument on March 9, 2012, the Court confirmed with plaintiff's counsel that plaintiff has withdrawn its motion to preclude the defendant's expert testimony. (Transcript of the Oral Argument on March 9, 2012 ("Tr.") at 2.) Moreover, defendant filed a motion to preclude the testimony of plaintiff's expert, David E. Beauregard, on December 29, 2011. That motion is still pending and will be addressed by the Court at a later date.

574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S.Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S.Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. DISCUSSION

### A. Collateral Estoppel Legal Standard

"'[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane*

*Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted); *accord Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584 (1985)). Collateral estoppel generally does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding. *See United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984); *see also Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 U.S. Dist. LEXIS 774, 2005 WL 121746, at *8 (S.D.N.Y. 2005) ("[T]he doctrine of collateral estoppel does not require that the same parties are named in the earlier action in order to apply to the instant action."). Additionally, a district court may raise the issue of collateral estoppel *sua sponte*. *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998).

### B. Application

As set forth on the record at the oral argument, Charter Oak does not dispute that:

(1) the issues in this case and the *Newcomb* case are identical; (2) the issues of whether the Electrolux Clothes dryers were negligently and defectively designed were actually litigated and decided in the *Newcomb* case; and (3) the issues previously litigated in the *Newcomb* case were necessary to support a valid and final judgment on the merits. (Tr. at 19; *see also* Pl.'s Opp. Br. at 12-19.) The only contested issue is whether plaintiff had a full and fair opportunity to litigate in the *Newcomb* case. (*Id.*)[4] Charter Oak claims that it did not have a full and fair opportunity to litigate in the *Newcomb* case because Electrolux committed a series of discovery violations in the prior action which, until recently, had gone unnoticed. (Pl.'s Opp. at 12-17.) Charter Oak claims that it has since been able to obtain the withheld evidence, and that evidence is crucial to the determination of the issues in this case. (*Id.* at 14-20.) Electrolux argues that the discovery of new evidence alone is not sufficient and the new evidence discovered by Charter Oak does not substantially change the issue at bar,

which was already litigated and decided in the *Newcomb* case. (Def.'s Reply at 5-9.) Accordingly, defendant argues that the *Newcomb* case still precludes plaintiff from bringing this action. For the reasons set forth *infra*, this Court finds that plaintiff did not have a full and fair opportunity to litigate in the earlier action, and therefore, collateral estoppel does not bar this action.

"[C]ollateral estoppel is an equitable doctrine – not a matter of absolute right. Its invocation is influenced by considerations of fairness in the individual case." *Penncom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (holding that plaintiff must be permitted discovery to collect evidence which might support a finding that the plaintiff was not afforded a full and fair opportunity to litigate before the court invoked collateral estoppel) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 334, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)). "In the context of collateral estoppel, preclusive effect may be refused when there is a compelling showing of unfairness or inadequacy in the prior litigation." *See, e.g., Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1233 (7th Cir. 2006) (citing *Montana v. United States*, 440 U.S. 147, 163-64, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)); *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 126 (D.C. Cir. 1984) (citing *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) and *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. at 333). In *Blonder-Tongue* the Supreme Court indicated that the "full and fair" opportunity inquiry includes the question of "whether without fault of his own the [party against whom collateral estoppel is to be invoked] was deprived of crucial evidence or witnesses in the first litigation." 402 U.S. at 333. Thus, "[o]ne of the factors that New York courts look to in determining whether

---

[4] As a threshold matter, plaintiff argues that it is inappropriate for Electrolux to raise collateral estoppel as an affirmative defense for the first time in its motion for summary judgment. (Pl.'s Opp. Br. at 12.) In particular, plaintiff also notes that, even though plaintiff filed this action one month after the *Newcomb* verdict, Electrolux not only failed to plead collateral estoppel as an affirmative defense in the answer, but waited nearly two years (after discovery was complete) to first raise the issue. (*Id.*) In response, defendant argues that the Second Circuit has held that the affirmative defense of collateral estoppel may be raised for the first time by way of a motion for summary judgment or by the court *sua sponte.* (Def.'s Reply. Br. at 4 (citing *Grieve v. Tamerin*, 269 F. 3d 149, 154 (2d Cir. 2001)).) This Court agrees with defendant that it can raise the defense of collateral estoppel for the first time in a summary judgment motion. However, as discussed *infra*, the Court finds that collateral estoppel does not apply in this action because plaintiff did not have a full and fair opportunity to litigate in the *Newcomb* case.

to apply the doctrine of collateral estoppel is the presence of new evidence." *Khandhar*, 943 F.2d at 249 (prior arbitration proceeding to recover compensation from insurance company for injuries sustained after an automobile accident did not bar medical malpractice action against doctors because the issues were not identical, plaintiff did not have a full and fair opportunity to litigate and it was not until after the prior proceeding concluded that new evidence was obtained) (citing *Schwartz v. Public Adm'r of the Cnty. of Bronx*, 24 N.Y.2d 65, 72, 246 N.E.2d 725, 729, 298 N.Y.S.2d 955, 961 (1969) and N.Y. Jur. 2d *Judgments* § 323); *see also Snyder v. City of Alexandria*, 870 F. Supp. 672, 689 (E.D. Va. 1994) ("Second, if, as [plaintiff] alleges, the police withheld exculpatory evidence concerning the victim's identification and the alleged confession, then it follows that [plaintiff] did not have a full and fair opportunity to litigate these issues in the Virginia proceedings."); *Sucher v. Kutscher's Country Club*, 113 A.D.2d 928, 930, 493 N.Y.S.2d 829 (App. Div. 1985) (court declined to grant motion to dismiss on collateral estoppel and res judicata grounds when plaintiff presented new evidence, a design evaluation report, as part of its opposition which was not prepared until three months after the summary judgment motion in the prior proceeding and contained material which would "unquestionably have produced a different result by raising substantial facts issues regarding the existence of design defects").

In this case, plaintiff did not have a full and fair opportunity to litigate the *Newcomb* action, and thus, collateral estoppel does not apply.[5] As detailed by plaintiff in its

---

[5] In its opposition papers, plaintiff points to Electrolux's conduct in other related litigations, apart from *Newcomb*, in an effort to argue that "Electrolux has consistently stonewalled discovery and withheld

crucial information." (Pl.'s Opp. Br. at 3) (capitalization omitted). For example, plaintiff asserts the following in connection with the discovery in the instant case:

> After Electrolux continued to produce witnesses for depositions who had little or no knowledge of the design of the dryer, Plaintiff's counsel conducted its own investigations in order to obtain the names of Electrolux's design engineers. Ultimately, Plaintiff's counsel obtained such information and noticed the depositions of said individuals, including Brian Ripley, John Jergens, and Michael Ricklefs. Once again, Electrolux attempted to stonewall discovery by unilaterally canceling these depositions just hours before Plaintiff's counsel was to board a plane to Iowa where the depositions were to be held. As a result, Plaintiff moved for sanctions in the form of reasonable non-refundable travel expenses. This Court [*i.e.*, Magistrate Judge Wall] granted Plaintiff's motion, stating that Electrolux's "behavior is rude, unprofessional, and sanctionable." [Magistrate Judge Wall] commented further that Electrolux's "conduct in this case is reprehensible" and that "[c]learly, [Electrolux] is stonewalling this case, refusing to give discovery, canceling depositions at the last minute." Finally, the court warned that any additional discovery violation would lead to a recommendation that a default judgment be entered against Electrolux.

(*Id.* at 8) (citations and footnotes omitted). Similarly, plaintiff describes how Electrolux was sanctioned on two occasions in the *Silver* litigation on discovery issues and Magistrate Judge Reyes stated that, if Electrolux failed to produce additional responsive documents, he would recommend that a $10,000 monetary sanction be imposed and that judgment be entered against Electrolux, warning to Electrolux's counsel, "[t]hree strikes and you're out." (*Id.* at 9-10). In addition, plaintiff asserts that, with respect to a similar case, *Automobile Insurance Company of Hartford, Connecticut a/s/o Sherry Demrick v. Electrolux Home Products, Inc.*, No. 08-cv-623-RJA-JJM (W.D.N.Y.) (the "*Demrick* matter"), "Electrolux forced Plaintiff to settle the *Demrick* matter by offering Plaintiff its entire damages, plus interest and costs" in order to avoid disclosure of damaging evidence and an unfavorable judgment. (*Id.* at 10).

opposition, plaintiff has obtained the following new evidence through its own investigations and motions to compel since the date judgment was entered in Electrolux's favor in the *Newcomb* case:

1. Warranty information for all free-standing Frigidaire and Kenmore gas dryers from 2002-2007 which revealed 2,341 warranty claims referencing fire or the indicators of one;

    a. *80 percent* of the claims involving a fire or an incident with burning, melting or smoking that were tied to lint occurred at 18 months or less;

2. Over 8,000 pages of emails and attachments which included an investigation performed by Electrolux of warranty information covering fires in gas dryers from 2002-2005;

3. Dryer fire census revealing 1,800 dryer fires;

4. Consumer Product Safety Commission reports in Electrolux's files regarding dryer fires;

5. Documents revealing that Electrolux discovered charred lint in a heater pan in its test dryers as early as 1995;

6. Documents from a 2005 Japanese government investigation in which its design engineer, Mr. Ripley admitted that lint could travel out of the back of the drum into the heater pan. . . .

7. Service bulletins and training manuals which provide pertinent information on dryer design.

(Pl.'s Opp. Br. at 15-16.) Moreover, in the *Newcomb* case, plaintiff's discovery requests clearly encompassed these non-privileged documents. For example, in the *Newcomb* case, the plaintiff requested:

A copy of all documents, studies, tests, analyses, reports, or results, including writings, memoranda, correspondence, drawings, graphs, charts, photographs, sound or video recordings, images, and other data or data compilations, regarding dryer lint generation under normal and/or abnormal usage conditions.

(*See* Pl.'s Ex. B, Schedule A to the Notice of Deposition, Request #8.) In addition, in the *Newcomb* case, plaintiff requested:

A copy of all documents, studies, tests, analyses, reports, or results, including writings, memoranda, correspondence, drawings, graphs, charts, photographs, sound or video recordings, images, and other data or data compilations, regarding component flammability and the containment and/or spread of fire.

---

The Court has not considered the conduct by Electrolux in these other cases, or in the discovery phase of this case before Magistrate Judge Wall, in connection with its decision on the collateral estoppel issue in this case. The collateral estoppel issue here rests on Electrolux's conduct in the *Newcomb* case. Obviously, in certain instances, plaintiff's summary of discovery in the various related litigations provides background as to how plaintiff later became aware of the crucial evidence that was not made available by Electrolux in the *Newcomb* case. However, the only relevant question for purposes of collateral estoppel in this case is whether plaintiff had a full and fair opportunity to litigate the *Newcomb* case, not whether there have been similar discovery issues with Electrolux in other cases.

(*See* Pl.'s Ex. B, Schedule A to the Notice of Deposition, Request #19.) The plaintiff in the *Newcomb* case also requested:

> A copy of all documents, studies, tests, analyses, reports, or results, including writings, memoranda, correspondence, drawings, graphs, charts, photographs, sound or video recordings, images, and other data or data compilations, regarding the accumulation of lint behind the drum and/or in the area of the burner, including documents relating to the reason for such accumulation.

(*See* Pl.'s Ex. B, Schedule A to the Notice of Deposition, Request #23.) In addition, the plaintiff in the *Newcomb* case requested:

> A copy of all documents, studies, tests, analyses, reports, or results, including writings, memoranda, correspondence, drawings, graphs, charts, photographs, sound or video recordings, images, and other data or data compilations, regarding efforts by or on behalf of Electrolux North America, Inc., or any of its parent companies, subsidiaries or affiliates, to reduce and/or prevent clothes dryer fires.

(*See* Pl.'s Ex. B, Schedule A to the Notice of Deposition, Request #25.) Thus, there is merit to plaintiff's claim that it did not have a full and fair opportunity to litigate in the *Newcomb* case because relevant documents, which were requested, were not produced during discovery.

Additionally, as detailed in plaintiff's brief, since the jury returned a verdict in the *Newcomb* case, there has been deposition testimony by Electrolux employees that would support plaintiff's theory in this case.

For example, Brian Ripley, testified at his deposition on June 22, 2011, that he had seen a report as early as 1995 that indicated that "Also the lint in the heater pans (especially the gas) is charred showing that it could be igniting in the burner tube and be carried up the tube in the heater pan." (Pl.'s Ex. H., 219, 221.) Similarly, plaintiff notes that Michael Ricklefs, an Electrolux Engineer, testified at his deposition on June 23, 2011 that "[h]e performed a test in 2002-03 which proved that lint could ignite in the burner tube, and ultimately, ignite the load." (Pl.'s Opp. Br. at 16 (citing Pl.'s Ex. P. 165-169).)

Electrolux's argument in response is that the revelation of this new evidence does not substantially change the issue, or present a new issue to be tried, and therefore, collateral estoppel still applies. (Def.'s Reply Br. at 6-7.) However, the Court disagrees. There is no dispute over whether the issues in the *Newcomb* case and the case at bar are identical. The issue is whether plaintiff had a full and fair opportunity to litigate in the *Newcomb* case such that preclusion is proper. Having carefully analyzed the new evidence, the Court concludes that there is a reasonable likelihood that the new evidence, had it been available in the *Newcomb* litigation, could have changed the result in favor of plaintiff. In sum, given the material evidence that has since come to light since the *Newcomb* case (which was responsive to plaintiff's discovery requests in *Newcomb* but not produced), principles of equity and fairness do not permit a finding that plaintiff had a full and fair opportunity to litigate its claims in the *Newcomb* case. Accordingly, the doctrine of collateral estoppel does not apply to plaintiff's claims in this case, and defendant's motion for summary judgment on that ground is denied.

9

## IV. CONCLUSION

For the reasons set forth herein, defendant's motion for summary judgment is denied in its entirety.


SO ORDERED.


JOSEPH F. BIANCO
United States District Judge

Dated: July 30, 2012
Central Islip, NY

* * *

Plaintiff is represented by Jeffery J. White, Craig A. Raabe, Jeffrey J. White and Laura A. Torchio of Robinson & Cole LLP, 280 Trumbull Street, Hartford, CT 06103. Defendant is represented by Cheryl M. Nicolson, Melissa L. Yemma of Nicholson Associates LLC, 1300 N. Providence Road, Suite 6050, Rose Tree Corporate center, Media, PA 19063.